# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANNA D. DAVIS** | **CIVIL ACTION** |
| **VERSUS** | **NO:  14-1086** |
| **JACK STRAIN, IN HIS OFFICIAL** | **SECTION: "S" (5)** |
| **CAPACITY AS SHERIFF OF ST.** | |
| **TAMMANY PARISH; ST.** | |
| **TAMMANY PARISH SHERIFF** | |
| **DEPUTY KATHERINE DOMANGUE** | |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendants Jack Strain and Sergeant John Morse (Doc. #30) is **GRANTED** as to plaintiff's claims against Strain and Morse arising under the Fourth and Fourteenth Amendments to the Constitution of the United States and plaintiff's Louisiana state-law false arrest claim, and those claims are **DISMISSED**.[1]

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by defendants Jack Strain and Sergeant John Morse (Doc. #30) is **DENIED** as to plaintiff's Louisiana state-law claims of assault, battery and intentional infliction of emotional distress.

## BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendants, Jack Strain and Sergeant John Morse.  They argue that there are no disputed genuine issues of material fact, and that they are entitled to judgment in their favor on plaintiff's claims against them arising under the Fourth and Fourteenth Amendments to the Constitution of the United States, and plaintiff's

---

[1] Plaintiff's remaining constitutional claims against Katherine Domangue and Rick Richard are identical to those against Strain and Morse.  Domangue and Richard have not moved for summary judgment. Under Rule 56(f)(1) of the Federal Rules of Civil Procedure, the court cannot grant summary judgment for a nonmovant without giving notice and a reasonable time to respond.  Plaintiff must show within fifteen days of the date of this order why her constitutional claims against Domangue and Richard should not be dismissed for the same reasons that her constitutional claims against Strain and Morse are dismissed.

Louisiana state-law claim of false arrest.  They also argue that  the court should decline to exercise supplemental jurisdiction over plaintiff's Louisiana state-law claims of assault, battery and intentional infliction of emotional distress.

Plaintiff, Anna D. Davis, M.D., filed this action seeking damages stemming from her arrest for allegedly violating Louisiana Revised Statutes § 40:971.2.[2] Davis was acquitted of the charge after a bench trial before Judge August J. Hand of the Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana.  Made defendants herein are: Rodney J. "Jack" Strain, in his official capacity as the Sheriff of St. Tammany Parish; Rick Richard, in his official capacity as Chief

_____

[2] La. Rev. Stat. § 40:971.2 makes it a crime to unlawfully prescribe, distribute, dispense or assist in the illegal obtaining of controlled dangerous substances.  The statute provides:

> A. This Section shall be known as and may be cited as the "Pain Management Clinic Drug Abuse and Overdose Prevention Act".
>
> B. It shall be unlawful for a physician, other licensed health care practitioner as defined in R.S. 40:961(31), or any other person to knowingly or intentionally commit any of the following acts:
>
> (1) Assist a patient or any other person in obtaining a controlled dangerous substance through misrepresentation, fraud, forgery, deception, or subterfuge.
> (2) Write a prescription for a controlled dangerous substance for a fictitious person.
>
> (3) Distribute or dispense a controlled dangerous substance to a fictitious person.
>
> (4) Operate any type of business or establishment where the primary purpose of the business or establishment is the sale, exchange, barter, or trade of a controlled dangerous substance for anything of value through misrepresentation, fraud, forgery, deception, or subterfuge.
>
> C. Whoever violates the provisions of this Section shall be imprisoned, with or without hard labor, for not more than five years, and in addition may be sentenced to pay a fine of not more than fifty thousand dollars.

of Police for the City of Mandeville; Katherine Domangue, in her individual capacity and official capacity as either an officer of the Mandeville Police Department or a commissioned St. Tammany Parish Sheriff's Deputy; Sergeant John Morse, in his individual capacity and official capacity as a St. Tammany Parish Sheriff's Deputy; and, Travelers Indemnity Company, Sheriff Strain's liability insurer.[3]

Davis is an internal medicine doctor who treats patients that are addicted to narcotics. Davis treated B.D., a narcotics addict, on-and-off for several years. Davis alleges that on January 21, 2013, B.D. requested a prescription for Valium, a benzodiazepine, because he was nervous about an upcoming job interview. Davis claims that she issued to B.D. on January 21, 2013, a prescription for two pills of Valium because B.D. had a history of panic attacks and it appeared that he was about to have one. Davis saw B.D. in her office for a regularly scheduled appointment on January 31, 2013.

Davis alleges that on May 15, 2013, Domangue swore in an affidavit seeking a warrant for Davis's arrest on the charge of violating La. Rev. Stat. § 40:971.2, that Davis actually wrote the Valium prescription for B.D. on January 31, 2013, and backdated it to January 21, 2013, because B.D. had failed a pre-employment drug test on January 23, 2013, and he needed to be able to produce a prescription for the drugs that were found in his system. Davis claims that Domangue's affidavit was based solely on B.D.'s statements, and intentionally or maliciously failed to include information regarding B.D.'s criminal history, that B.D. was on probation for a felony charge, and that the officers involved in this matter promised that they would not arrest B.D. if he made statements inculpating Davis. Davis claims that these facts were material and would have negated

---

[3] Richard's unidentified liability insurer is named as "ABC Insurance Company."

3

probable cause.  Davis alleges that Morse was Domangue supervisor and "assisted and supervised [Domangue] in the preparation of the arrest warrant."  Davis alleges that, due to this failure, Domangue and Morse violated Davis's right to be free from false arrest guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the Untied States.  Davis also alleges that Domangue and Morse are liable for Louisiana state-law torts of false arrest, assault, battery and intentional infliction of emotional distress.  Davis alleges that Strain and Richard are liable in their official capacities for the constitutional torts for failing to adequately screen, hire, train, supervise and/or discipline Domangue and exhibiting a policy, practice, and/or custom of mitigating or concealing civil rights violations.  Davis further alleges that Strain and Richard are liable for the Louisiana state-law torts via the respondeat superior doctrine.

Strain and Morse moved for summary judgment.  Morse argues that he is entitled to qualified immunity as to Davis's Fourth and Fourteenth Amendment claims against him in his individual capacity because a judge signed the warrant for Davis's arrest, indicating that the affidavit accompanying the warrant application included sufficient information to establish probable cause.[4] Davis argues that there are genuine issues of material facts regarding whether Morse told B.D. that he would not be arrested if he gave a statement inculpating Davis.  She argues that this dispute, along with the officers' failure to include information about B.D.'s criminal history in the affidavit supporting the warrant application, were material to probable cause.  B.D. was the only witness that claimed to have seen Davis backdate the prescription. If B.D. had been charged and convicted with respect to this incident, he could have been billed as a multiple offender and faced 20 years to life

---

[4] Strain's arguments regarding the constitutional claims will not be discussed because Davis concedes that those claims should be dismissed.

in prison.  Davis argues that this gave B.D. sufficient incentive to incriminate her to save himself, and the information should have been included in the affidavit supporting the warrant application because probable cause was based solely on B.D.'s statements.

Morse and Strain also argue that Davis's false arrest claim arising under Louisiana law should be dismissed because a judge signed the arrest warrant.  Further, they argue that this court should decline to exercise supplemental jurisdiction over Davis's state-law tort claims after the constitutional claims against Morse and Strain are dismissed.  Davis argues that, if this court declines to exercise supplemental jurisdiction, her state-law claims should be dismissed without prejudice so that she can pursue them in the state court.

## ANALYSIS

### I.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986).  The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

5

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## II.     Davis's Fourth And Fourteenth Amendment Claims Against Morse in His Individual Capacity

Davis alleges that the warrant application prepared and submitted by Domangue was facially invalid because it omitted facts that she claims would have negated probable cause. Specifically, Davis claims that the affidavit should have included information regarding B.D.'s criminal history, his then-current probation, and the officers' alleged promise not to arrest B.D. if he gave a statement incriminating Davis. Davis alleges that Morse assisted and supervised Domangue in preparing the warrant application. Morse argues that he is entitled to qualified immunity because a judge signed the warrant, indicating that the supporting affidavit included enough information to establish probable cause for Davis's arrest and that the information Davis claims should have been included in Domangue's affidavit supporting the warrant application was immaterial to probable cause.

Qualified immunity is an affirmative defense that protects public officials who are sued in their individual capacities for violations of constitutional rights. Government officials are entitled to qualified immunity to the extent that "their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982). The qualified immunity defense is intended to provide protection to "all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent . . . placed the statutory or constitutional question beyond debate." Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013) (quotations omitted).

"To establish an entitlement to qualified immunity, a government official must first show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority." Beltran v. City of El Paso, 367 F.3d 299 (5th Cir. 2004). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. Kitchen v. Dall. Cnty., Tex., 759 F.3d 468, 476 (5th Cir. 2014). "[A] plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011) (*en banc*) (citations and quotations omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 129 S.Ct. 808, 818 (2009).

Davis alleges that Morse violated her Fourth Amendment right to be free from false arrest. This right is clearly established. Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 206 (5th Cir. 2009) (citations omitted).

The Fourth Amendment, made applicable to the States via the Fourteenth Amendment, "ensures that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but

upon probable cause.'" Id. at 195 (quoting U.S. Const. amend IV). "The constitutional claim of false arrest, in violation of the Fourth Amendment, requires a showing that there was no probable cause." Navarro v. City of San Juan, Tex., - - - Fed. Appx. - - -, 2015 WL 5049911, at *4 (5th Cir. 8/27/2015) (citations omitted). The Supreme Court of the United States "has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable causation, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Piazza v. Mayne, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting Michigan v. DeFillippo, 99 S.Ct. 2627, 2632 (1979)). A police officer is "entitled to qualified immunity for an arrest 'if a reasonable person in [his] position could have believed he had probable cause to arrest.'" Navarro, 2015 WL 5049911, at *4 (quoting Glenn v. City of Tyler, 242 F.3d. 307, 313 (5th Cir. 2001).

Usually, "[w]here an arrest is made under the authority of a properly issued warrant, the arrest is simply not a false arrest." Smith v. Gonzales, 670 F.2d 522, 526 (5th Cir. 1982). The United States Court of Appeals for the Fifth Circuit further explained:

> "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994); see also Murray v. Earle, 405 F.3d 278 (5th Cir. 2005) ("[W]hen a neutral intermediary, such as a justice of the peace, reviews the facts and allows a case to go forward, such an act 'breaks the chain of causation.'" (quoting Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1988))). Despite review by an independent intermediary, the initiating party may be liable for false arrest if the plaintiff shows that "the deliberations of that intermediary were in some way tainted by the actions of the defendant." Hand, 838 F.2d at 1428.

Deville v. Marcantel, 567 F.3d 156, 170 (5th Cir. 2009).

8

Davis alleges that the deliberations of the judge that signed the arrest warrant were tainted by Morse's actions because he "assisted and supervised" Domangue in the preparation of the affidavit supporting the warrant, which Davis alleges failed to include information that was material to probable cause.  In Franks v. Delaware, 98 S.Ct. 2674, 2676 (1978), the Supreme Court of the United States held that an officer who either signed the application for a warrant or was present when the affiant appeared before the judge, may be liable for violating the Fourth Amendment when he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth" that results in a warrant being issued without probable cause.  The United States Court of Appeals for the Fifth Circuit has "interpreted Franks liability to also include liability for an officer who makes knowing and intentional *omissions* that result in a warrant being issued without probable cause." Michalik v. Hermann, 422 F.3d 252, 258 n. 5 (5th Cir. 2005) (citing Hart v. O'Brien, 127 F.3d 424, 448 (5th Cir. 1997), *abrogated in part by* Kalina v. Fletcher, 118 S.Ct. 502 (1997)).

However, an officer is entitled to qualified immunity if he has an objectively reasonable basis for believing that the facts alleged in his affidavit are sufficient to establish probable cause. Malley v. Briggs, 106 S.Ct. 1092, 1095 (1986). Said differently, an officer whose request for a warrant allegedly caused an unconstitutional arrest will lose the shield of immunity "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Id. at 1098.  The question "is whether a reasonably well-trained officer in [the same] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Id. at 1098.

Although Malley is directed at the officer that signed and presented the warrant application, the United States Court of Appeals for the Fifth Circuit has held that liability under Malley extends

to an officer "who was fully responsible for" a warrant application and is "in a position to see the whole picture, to understand his responsibility [under Malley], and thus fully to assess probable cause questions." Spencer v. Staton, 489 F.3d 658, 663 (5th Cir. 2007), *opinion withdrawn in part on reh'g* (quoting Michalik, 422 F.3d at 261).

In his affidavit submitted in support of the motion for summary judgment, Morse declares that he "was personally involved in virtually all aspects of [the] investigation, including the interviewing of witnesses, the tracking down of documentation . . . and the preparation of the affidavit in support of arrest warrant." Thus, liability under Malley could extend to Morse if he should have known that the affidavit supporting the arrest would not have established probable cause if B.D.'s criminal record, probation status, and alleged deal with the officers were included in the affidavit supporting the warrant.

The affidavit supporting the application for the warrant for Davis's arrest states:

> During the early months of the year 2013, Detective Katherine Domangue of the St. Tammany Parish Sheriff's Office Narcotics Task Force received information from the office of Doctor Rachel Murphy who is employed at Northshore Covington Medical Center at the address of 73015 Highway 25, Covington, La. Dr. Murphy advised that on January 23rd, 2013, a patient by the name of [B.D.] came into her office to receive a pre-employment drug screen. Pursuant to the drug screen, the results showed positive results for "Benzodiazepines" and "Barbiturates." Mr. [B.D.] later produced a prescription to Dr. Murphy backdated as prescribed/filled on the date of January 21st, 2013, which Dr. Murphy believed to be fraudulent. Dr. Murphy stated that upon checking the prescription history for [B.D.], he showed negative results for a prescription with the prescription number 217309 between the dates of January 21st, 2013 and January 23rd, 2013.

> On May 9th, 2013, Detective Domangue obtained a State of Louisiana Search Warrant, signed by the Honorable Judge Allison Penzato of the 22nd Judicial District Court, for the office of Dr. Rachel Murphy located at 73015 Highway 25, Covington, La.

Pursuant to this warrant, Detective Domangue obtained further information related to the prescription [B.D.] brought to Dr. Murphy in an attempt to justify the narcotics found in his drug screen. The bottle was labeled for [B.D.] and stated it was dispensed by C and C Drugs located at 2803 Highway 59, Mandeville, La. on 01/21/13. The bottle further revealed the prescription was written on 01/21/13 by Dr. Anna Davis who works from an office located at 339 Girod St., Mandeville, La. The prescription (#217309) was for the Controlled Dangerous Substance (C.D.S.) Diazepam 5mg and what appeared to be for the quantity of 2 tablets. Dr. Murphy further advised she contacted the Pharmacist at C and C Drugs, known as Scott, who initially told Dr. Murphy he filled the prescription on 1-21-13. He then recanted his story and admitted that he filled the prescription but back dated the fill date to the prescription which was written on the backdated date of 1-21-13.

Upon receiving the results from the drug screen, Dr. Murphy notified Mr. [B.D.] that he failed the drug screen (results reported on 1-28-13) and notified him of the narcotics located in his drug screen. Mr. [B.D.], accompanied by his father and after meeting in person with Dr. Murphy, left the office. Dr. Murphy later received a phone call from the father of [B.D.] stating he drove [B.D.] to the Doctor office of Anna Davis on Girod St. at which time [B.D.] obtained the aforementioned prescription (Diazepam 5mg) backdated for 01/21/13. He then, by way of his father['s] transport, proceeded to C and C Drugs on Highway 59 where he obtained the prescription. With this fraudulent prescription in hand, Mr. [B.D.] proceeded back to Dr. Murphy's office with the fraud prescription.

On May 9th, 2013, Detective Domangue met with [B.D.], accompanied by his attorney, at the Law Enforcement Complex located in Covington, La. Mr. [B.D.], issued Detective Domangue a handwritten statement regarding the events that took place on and after January 21st, 2013. Mr. [B.D.]'s statement coincided with the written statement Dr. Murphy issued Detective Domangue. He confirmed his actions on the day of learning he failed the drug test and stated he had his father drive him to Dr. Anna Davis's office on Girod St. Once inside the office, he stated that he advised Dr. Davis he failed a drug test for Valium and needed a prescription for Valium so he "would be okay." He further asked her to back date the prescription to his appointment which was on the prior Monday (1-21-13). Failing to question Mr. [B.D.] and not hesitant to comply, she wrote the prescription back dated for 1-21-13 and failed to charge him anything for the visit. Mr. [B.D.] stated he then proceed to C and

C Drugs whom filled the prescription without any questioning or incident. Upon Mr. [B.D.] finishing the written statement, Detective Domangue interviewed him further on the arrangements at the Doctor office of Anna Davis. Mr. [B.D.] stated that once you enter the office, you do not sign in on a log. Dr. Davis spends less than five minutes with her patients and writes them the scripts. He further stated she only accepts cash payments (approximately $225.00/visit) and claims that she will bill the insurance at a later date.

Detective Domangue conducted an extensive review of the Prescription Monitoring Profile for [B.D.]. It should be noted that the PMP failed to show a prescription for Diazepam between the dates of 05/09/2012 until 05/09/2013. On May 13th, 2013, Detectives executed two State of Louisiana Search Warrants, signed by the Honorable Judge Raymond Childress of the 22nd Judicial District Court, at the address of 2803 Hwy 59, Mandeville, La. (C and C Drugs) and 339 Girod St., Mandeville, La. (Dr. Anna Davis's office). Pursuant to the warrant executed at the Pharmacy, Detectives obtained the original backdated prescription written for Valium (a.k.a. Diazepam) which was signed by Dr. Anna Davis and dated 1-21-13. Upon execution of the Search Warrant at the address of 339 Girod St., Detectives recovered the patient file belonging to [B.D.]. In his chart, Detective Domangue located a document titled "PROGRESS NOTE" which stated patient name to be "[B.D.]" and dated "1-21-13". The page contained several notations including a "Decision Making Worksheet". The worksheet had two separate paragraphs signed separately by Dr. Davis which she claimed to be written on the date of 1-21-13. Detective Domangue concluded that the top paragraph was written on the date of 1-21-13, and the second paragraph was written in what appeared to be a different pen and contained information regarding the Valium. Upon speaking with Dr. Davis regarding this incident at the time of the Search Warrant, Dr. Anna Davis was unable to explain the reason for the backdated script and acted a[s] though she was confused about the events that occurred.

Your affiant believes that on the date of 1-31-13, [B.D.] went to the office of Dr. Anna Davis and requested a backdated prescription for Valium with a prescribed date of 1-21-31. Dr. Davis issued him the backdated prescription and is believed to have also written notes in his file for the sheet dated 1-21-13 in an attempt to conceal the backdated prescription thus placing Doctor Anna Davis in violation of L.R.S. 40:971.2 which relates to the Unlawful

Prescribing, Distributing, Dispensing, or Assisting in Illegally
Obtaining Controlled Dangerous Substances.

Davis argues that Morse was unreasonable in relying on B.D.'s word because of his criminal record and motive for lying. She contends that B.D.'s statements were the only basis for probable cause in the warrant, and the judge should have been made aware of the issues that called his credibility into question. However, the affidavit in support of the arrest warrant includes other information that established probable cause, specifically, the information obtained from Dr. Murphy, the pharmacist and B.D.'s records at Dr. Davis's office. Thus, the affidavit supporting the warrant application was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable" even if B.D.'s credibility issues are considered. Therefore, Morse's motion for summary judgment is GRANTED with respect to Davis's individual capacity claims against him for violations of her Fourth Amendment right to be free from false arrest, and that claim is DISMISSED WITH PREJUDICE.

### III.   Davis's Fourth And Fourteenth Amendment Claims Against Strain and Morse in Their Official Capacities

Morse and Strain argue that Davis's Fourth and Fourteenth Amendment claims against them in their official capacities should be dismissed because there was no constitutional violation. Davis concedes that she does not have evidence to support such a claim against Strain, but reserves her right to reassert the claim if she discovers relevant evidence.

In Monell v. Dep't of Soc. Servs. of City of New York, the Supreme Court of the United States held that local governments cannot be held liable under § 1983 for constitutional deprivations effected by their individual employees in their official capacities absent a showing that the pattern of behavior alleged arose from "the execution of a government's policy or custom." 98 S.Ct. 2018,

13

2037 (1978). To succeed on a <u>Monell</u> claim, the plaintiff must establish: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. <u>Valle v. City of Hous.</u>, 613 F.3d 536, 541-42 (5th Cir. 2010). Because the court has found that Morse did not violate Davis's Fourth Amendment right to be free from false arrest, the <u>Monell</u> claims against Morse and Strain are DISMISSED WITH PREJUDICE.

## III.    Davis's Louisiana State-Law Claim for False Arrest Against Strain and Morse

Morse and Strain move for summary judgment on Davis's claim for false arrest under Louisiana law. With respect to Louisiana state-law claims for false arrest, the United States Court of Appeals for the Fifth Circuit has stated that "[b]ecause Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry here is applicable to both [plaintiff's] federal and state law claims." <u>O'Dwyer v. Nelson</u>, 310 Fed. Appx. 741, 745 n. 4 (5th Cir. 2009). Thus, the court's finding that Morse is entitled to summary judgment on Davis' Fourth Amendment false arrest claim applies to her Louisiana state-law false arrest claim. Further, without tortious conduct on Morse's part for which Strain could answer under *respondeat superior*, Davis cannot maintain her state-law false arrest claim against Strain with respect to Morse's conduct. Therefore, Strain and Morse's motion for summary judgment is granted as to Davis's Louisiana state-law false arrest claims against them, and those claims are DISMISSED WITH PREJUDICE.

## IV.    Davis's Remaining State-Law Claims Against Strain and Morse

Davis also brings Louisiana state-law claims for assault, battery and intentional infliction of emotional distress against Strain and Morse. Strain and Morse argue that this court should decline

to exercise supplemental jurisdiction over these claims because the constitutional claims against them have been dismissed.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." Further, a district court may decline supplemental jurisdiction if the state law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction. Id. at § 1367(c)(2); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996) ("[I]f it appears that the state issues substantially predominate . . . the state claims may be dismissed without prejudice and left for resolution to state tribunals.").

The court has not dismissed all claims over which it has original jurisdiction because Davis's constitutional claims against Domangue and Richard remain pending.  Therefore, the court will exercise supplemental jurisdiction over Davis's Louisiana state-law claims for assault, battery and intentional infliction of emotional distress against Strain and Morse at this time, and the motion for summary judgment is DENIED as to dismissing these claims.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendants Jack Strain and Sergeant John Morse (Doc. #30) is **GRANTED** as to plaintiff's claims against Strain and Morse arising under the Fourth and Fourteenth Amendments to the Constitution of the United States and plaintiff's Louisiana state-law false arrest claim, and those claims are **DISMISSED.**

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by defendants Jack Strain and Sergeant John Morse (Doc. #30) is **DENIED** as to plaintiff's Louisiana state-law claims of assault, battery and intentional infliction of emotional distress.

15

New Orleans, Louisiana, this  29th  day of January, 2016.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**